IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENDRA CARRENO, ) | |
| ) | |
| Plaintiff, ) | NO. 3:08-00747 |
| ) | JUDGE HAYNES |
| v. ) | |
| ) | |
| DOJI, INC. d/b/a DEMOS' STEAK AND ) | |
| SPAGHETTI HOUSE d/b/a DEMOS' ) | |
| RESTAURANT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Kendra Carreno, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against Defendant DOJI, Inc. d/b/a Demos' Steak and Spaghetti House d/b/a Demos' Restaurant ("Demos'"), her former employer. Plaintiff asserts that Demos' discriminated against her based upon her pregnancy by failing to promote her and ultimately terminating Plaintiff after she informed her supervisors of the pregnancy. The parties have completed discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 15), contending, in sum, that Plaintiff lacks any proof for her claims of discrimination. Defendant contends Plaintiff engaged in unprofessional and inappropriate conduct, including problems with her "attitude and performance," and had a history of conflict with other employees. Defendant received complaints from customers and other staff members regarding Plaintiff's behavior, and many of these complaints were received before anyone at Demos' knew that Plaintiff was pregnant. Additionally, Defendant argues that even if Plaintiff could show a

prima facie case of discrimination, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's non-promotion and termination, and Plaintiff has offered no evidence that Defendant's proffered reason is pretextual. Finally, Defendant argues that Plaintiff's Tennessee Human Rights Act Claim fails for the same reason or alternatively is barred by the statute of limitations.

Plaintiff responds that she has presented a prima facie case, and argues that Defendant's proffered reason for her termination is pretextual by citing disciplinary actions taken with regard to other employees. Plaintiff references other employees who accumulated similar disciplinary records and did not lose their employment. However, Plaintiff does not address a similarly situated employee (another pregnant manager who Plaintiff herself described as receiving allegedly favorable treatment).

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted. While Plaintiff has offered a prima facie case of discrimination, she has failed to offer any evidence that might show that Defendant's proffered reasons for her termination were pretextual. Plaintiff's bare assertions that the proffered reasons for her termination were pretextual do not withstand the scrutiny necessary for summary judgment. As such, Defendant's motion for summary judgment should be granted.

## A. Findings of Fact[1]

Plaintiff began working for the Defendant in May 2004 as an assistant manager at Defendant's Nashville location. (Docket Entry No. 23, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶¶ 6-8). Plaintiff reported to Linda Lemmons, the General Manager of the Nashville restaurant, and Plaintiff's job responsibilities included assisting the staff, taking care of customers, and overseeing operations. Id. at ¶¶ 3, 10-11). Defendant's policies were conveyed to Plaintiff and required managers to manage in a "firm, fair, friendly, and flexible" manner and be "Assistants to the Staff." Id. at ¶¶ 14-16.

Plaintiff's employee history records a number of incidents of conflict with other employees. In July 2006, Plaintiff was "written up" after a server complained of discrimination by the Plaintiff because the server was pregnant, and Plaintiff apologized to the server after Lemmons discussed the complaint with Plaintiff. Id. at ¶ 17; Docket Entry No. 17-2, Carreno Deposition at 49-52. Later, in October 2006, Lemmons confronted Plaintiff about her "attitudes and performance" because another manager had complained to Demos' management that Plaintiff "had an attitude." (Docket Entry No. 23, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶¶ 18-19). Peter Demos (the Defendant's company president) noted in an October 15, 2006 e-mail that he did not want to send new employees to train at the

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

Nashville location because of "the training I feel is happening at downtown with Kendra, the kitchen, etc..." Id. at ¶ 23; Docket Entry No. 17-3, Defendant's Exhibit 9 at 82 of 96. Finally, in January 2007, Plaintiff received a deduction from her bonus for not "handling staff friendly and handling managers and staff friendly." (Docket Entry No. 23, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶ 24). This deduction occurred because Defendant was not satisfied with the way Plaintiff was handling staff. Id. at ¶ 25. The above events all occurred before anyone at Demos' knew that Plaintiff was pregnant. Id. at ¶ 26.

Later in January 2007, Plaintiff informed Defendant's employees that she was pregnant. Id. at ¶ 57. On May 3, 2007, Plaintiff sent home an employee, Phinn Shannon, after an argument where Plaintiff claims that Shannon approached Plaintiff in a "very aggressive manner." Id. at ¶ 30; Docket Entry No. 17-2, Carreno Deposition at 73-75. Shannon complained that Plaintiff was not "treating him with respect," and the following day Plaintiff met with Shannon, Lemmons, and Peter Demos. (Docket Entry No. 23, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at ¶¶ 31-32). During that meeting, Shannon complained about the way Plaintiff treated him, and later Peter Demos told Plaintiff that he was unhappy with the way Plaintiff handled the situation. Id. at ¶¶ 33-34.

On May 6, 2007, William Crowder, a server, was terminated by the Defendant for referring to Plaintiff with a vulgar epithet. Id. at ¶ 35. Following his termination, Crowder e-mailed Defendant's office and stated that Plaintiff "provoked [him] to a stress level" that caused him to curse, and that "more people have quit and/or been fired because of her lack of actions." Id. at ¶ 37. Shortly thereafter, Defendant received an anonymous "Anytime Card" (a note card sent directly to Peter Demos by employees to raise concerns) that indicated that Plaintiff showed

favoritism and did not assist the servers that she did not like. Id. at ¶¶ 38-40. Because of this complaint, on May 18, 2007, Plaintiff was written up, and Lemmons met with Plaintiff to discuss the complaints that Defendant received about Plaintiff's interactions with the staff. Id. at ¶¶ 41-42. Lemmons wrote on Plaintiff's personnel file, "Kendra's attitude is bad. She is consistently being called rude by the staff (3x last 3 weeks). This has to go away for Kendra." Id. at ¶ 43. These concerns were communicated to the Plaintiff, and Plaintiff understood that Defendant was not pleased with her behavior. Id. at ¶¶ 44-45.

Nearly concurrently with that meeting, Defendant received another Anytime Card (ostensibly from a server named Audrey Hrabowski) complaining that Plaintiff "picks on certain people," "plays favorites," and treats Hrabowski disrespectfully. Id. at ¶¶ 46-47. On or about May 19, 2007, Defendant surveyed its non-kitchen employees at the Nashville location, asking them to rank the restaurant's managers on various management qualities. Id. at ¶ 48. Plaintiff scored as the highest manager in the category of "which manager shows the most favoritism?" and scored the third highest in the category of "which manager is least helpful to you?" Id. at ¶¶ 49-50.

On May 25, 2007, Defendant terminated Plaintiff's employment. Id. at ¶ 51. Defendant asserts that Peter Demos made the decision to terminate Plaintiff's employment himself as a business decision based upon the complaints Defendant had received regarding Plaintiff's interactions with other employees. Id. at ¶¶ 52-54. Plaintiff has admitted that Defendant terminated her because it believed she was being unfair to certain staff members even though she felt that such allegations were untrue. Id. at ¶ 55.

## II. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Accord <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

-6-

Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he

respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

-8-

there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New International Dictionary</u> (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the

-9-

nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.    Complex cases are not necessarily inappropriate for summary judgment.

    2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3.    The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

    4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

    6.    As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

    7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

    8.    The respondent cannot rely on the hope that the trier of fact will disbelieve

-10-

the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

A discrimination claim on the basis of pregnancy is evaluated as a sex discrimination claim under Title VII. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000). Absent direct evidence, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973), applies. Thus, Plaintiff must first produce sufficient evidence to make a prima facie showing of discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). If Plaintiff satisfies this burden, Defendant must produce some evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination. Id. Once defendant makes this

-11-

showing, Plaintiff must then submit evidence that Defendant's allegedly legitimate reason was a pretext for discrimination. Reeves, 530 U.S. at 143.

To establish a prima facie case of pregnancy discrimination under Title VII, Plaintiff must show: "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." Asmo v. Keane, Inc., 471 F.3d 588, 592 (6th Cir. 2006). To avoid summary judgment, Plaintiff must also offer evidence that she was treated differently from non-pregnant persons who were similar in their ability or inability to work. Zhu v. Vanderbilt University, 2007 WL 2963980, at *12 (M.D. Tenn. Oct. 5, 2007) (citing Ensley-Gaines v. Runyon, 100 F.3d 1220, 1226 (6th Cir. 1996)).

Plaintiff has successfully offered evidence of a prima facie case of pregnancy discrimination. She has presented evidence that the Defendant knew of her pregnancy as of January 2007, that she was qualified for her job, that she was subjected to adverse employment decisions, and that there was a nexus between her pregnancy and the adverse employment decision. Although Plaintiff has not presented much evidence in support of the fourth element, temporal proximity alone may suffice to demonstrate the required nexus. Asmo, 471 F.3d at 593. The facts presented here demonstrate that Defendant learned of Plaintiff's pregnancy in January 2007, and that Plaintiff additionally needed two weeks of pregnancy leave due to medical restrictions beginning on or about April 2, 2007. (Docket Entry No. 17-2, Carreno Deposition at 145-146). This close temporal proximity between Plaintiff's need for medical leave due to her pregnancy and her termination is sufficient to support a prima facie case of pregnancy discrimination.

Plaintiff has also offered evidence that she was treated differently from non-pregnant persons who had similar abilities and disciplinary histories. In the response to the motion for summary judgment, Plaintiff cites employees who had employment issues, but were merely disciplined rather than being terminated. (Docket Entry No. 20 at 7). Male managers were demoted due to serious problems with their work performance, but given numerous opportunities to improve their behavior in subordinate positions rather than being terminated. Id. As such, Plaintiff has presented at least some evidence that she was treated differently from non-pregnant persons who were similarly situated.

Although Plaintiff has offered a prima facie case of pregnancy discrimination, the Defendant has articulated legitimate non-discriminatory reasons for her lack of promotion and termination. Defendant cites numerous complaints against Plaintiff and cataloged disciplinary incidents for unprofessional and rude behavior. These incidents appeared to Defendant not as one-time issues, but a recurring problem that began even before Plaintiff became pregnant. As such, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination.

Under McDonnell Douglas, the burden now shifts to Plaintiff to demonstrate that Defendant's stated reasons for the lack of promotion and termination are pretextual. Plaintiff may establish pretext by showing that: (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the defendant's action. Cantrell v. Nissan North America Inc., 145 Fed. Appx. 99, 107 (6th Cir. 2005). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). An employer need only have an honest belief about the

proffered reason for a plaintiff's termination. "[A]rguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*." Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998) (emphasis in original and internal quotations omitted).

In her response to the motion for summary judgment, Plaintiff makes conclusory allegations that Defendant's stated reasons for her termination had no basis in fact and were based on speculative hearsay from Defendant's Anytime Cards. Despite Plaintiff's efforts to undermine Defendant's stated reasons for her lack of promotion and termination, however, Defendant had ample evidence of problems with Plaintiff's performance grounded on a strong basis in fact. Further, Defendant's treatment of a similarly situated *pregnant* employee helps demonstrate that Plaintiff's behavior toward other employees substantially contributed to the Defendant's dissatisfaction with her performance and ultimately her termination. Plaintiff fails to address the Defendant's treatment of the other pregnant assistant manager, undermining her argument that Defendant's stated reasons are insufficient to explain its actions.

In fact, the undisputed facts demonstrate that Defendant had received numerous complaints and taken issue with Plaintiff's behavior. The increasing frequency of these complaints (that began before Plaintiff became pregnant) led Defendant to its business decision to terminate Plaintiff's employment. In short, Plaintiff has failed to offer any evidence satisfying the required showings under Cantrell. As such, she cannot establish that Defendant's proffered reasons for her lack of promotion and termination were pretextual.

Finally, Plaintiff's Tennessee Human Rights are also analyzed under the McDonnell

Douglas framework set forth above. See Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). As such, Plaintiff's Tennessee Human Rights claims must also fail, and Defendant's motion for summary judgment should be granted.

For the reasons stated above, Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

Entered this the 29th day of October, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge